UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Franklin Christmas, | ) | |
| | ) | C/A No.: 4:13-cv-1374-TER |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN,[1] ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case is before the court pursuant to Local Rule 83.VII.02, D .S.C., concerning the disposition of Social Security cases in this District on consent of the parties. 28 U.S.C. § 636(c).

## I.  PROCEDURAL HISTORY

On February 5, 2010, the Plaintiff applied for DIB and SSI.  He alleges disability beginning January 25, 2010.  A hearing was held by an administrative law judge ("ALJ") on January 12, 2012. The ALJ found in a decision dated February 17, 2012, that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review. Plaintiff filed this action on May 21, 2013, in the United States District Court for the District of South Carolina.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

## II.  INTRODUCTORY FACTS

Plaintiff was born on May 11, 1965, and was 44 years old on the alleged onset date. (Tr. 54).

Plaintiff has a limited education and past relevant work experience as an assistant manager. (Tr. 54).

Plaintiff alleges disability due to avascular necrosis in his hips, his HIV positive status, and anxiety. (Tr. 50-51).

## III.  THE ALJ'S DECISION

In the decision of February 17, 2012, the ALJ found  the following:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2.   The claimant has not engaged in substantial gainful activity since January 25, 2010, the alleged onset date (20 CFR 404.1571, *et seq*., and 416.971 *et seq*.).

3.   The claimant has the following severe impairments: HIV and bilateral avascular necrosis (20 CFR 404.1520(c) and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or  medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform no lifting or carrying more than 10 pounds occasionally and 1-2 pounds frequently with no prolonged standing or walking for more than 2 hours a day; no standing or walking on wet or uneven surfaces; occasional stooping, kneeling or crouching; no operation of foot controls; no work around excessive vibration; no work around hazardous machinery and no operation of automotive equipment.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 an 416.965).

7.  The claimant was born on May 11, 1965 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  There are transferable job skills from the claimant's past work as an assistant manager.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 25, 2010, through date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 48-55).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that it is free from harmful legal error. Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence,

and the Commissioner's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence.   42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established.   Five questions are to be asked sequentially during the course of a disability determination.   20 C.F.R. §§ 404.1520, 1520a (1988).   An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary.   20 C.F.R. § 404.1503(a).   Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).   An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied.   Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant

4

work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. ARGUMENTS

The Plaintiff argues that the ALJ erred in his decision. Specifically, Plaintiff raises the following arguments in his brief: (1) that the ALJ improperly ignored the opinion of Plaintiff's treating source, nurse practitioner Tona Tedder at CareSouth Carolina and (2) that the ALJ made an improper credibility finding in violation of SSR 96-7p and 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). (Plaintiff's brief).

Defendant argues that the ALJ (1) properly considered Nurse Tedder's opinion; and (2) properly determined that Plaintiff's allegations of subjectively disabling symptoms were not entirely credible.

## V. MEDICAL RECORDS AND OPINIONS

### 1.    _Prior to Plaintiff's alleged disability_

According to the record medical evidence, Plaintiff was diagnosed with HIV infection in

1999 and has been followed by Jehed Abdalla, M.D., at least since 2008. (Tr. 273-74). Plaintiff has been treated with medications, and Dr. Abdalla consistently described him as HIV stable.  (Tr. 273, 270, 266, 258, 333). When reviewing Plaintiff's systems, Dr. Abdalla consistently described him as normal and with no complaints. (Tr. 269, 265, 257). No functional limitations were imposed.

In December 2009, Plaintiff was seen for a check-up at CareSouth Carolina. (Tr. 221). He complained of right hip pain, stating that at times he can hardly walk.  (Tr. 221).  He was diagnosed with anxiety and chronic right hip pain. (Tr. 221). Subsequent x-rays and an MRI scan revealed bilateral avascular necrosis in the hips. (Tr. 220; 222-223). He was prescribed medications and was referred to an orthopedist. (Tr. 220).

Plaintiff underwent an orthopedic evaluation by Nigel Watt, M.D., on January 15, 2010. (Tr. 212-13). Dr. Watt recounted Plaintiff's symptoms as variable, worse with any prolonged standing towards the end of the day, and with some pain at rest.  (Tr. 212). On examination. Dr. Watt noted that Plaintiff had, *inter alia*, a normal gait, normal ranges of motion in the knees with no pain, normal ankles and feet, and normal range of pain free stable motion without weakness  in the shoulders, elbows, forearms, wrists, and hands. (Tr. 212). Dr. Watt diagnosed bilateral avascular necrosis in the hips, partial femoral head collapse, and secondary degenerative arthritis. (Tr. 213). For treatment, Dr. Watt recommended over-the-counter, non-steroidal, anti-inflammatory medications ("OTC NSAID if needed").  (Tr. 213). Dr. Watt stated that there would be "[n]o 'preventative'  surgical measures," and that hip replacement surgery would be performed when symptoms and function dictates.  (Tr. 213).

As to Plaintiff's work, Dr. Watt noted that Plaintiff would try to arrange shorter working shifts with limited periods of prolonged standing. (Tr. 213). Dr. Watt recommended that Plaintiff "[a]void forced range of motion or impact activities" and encouraged "general aerobic activity for

weight control and general fitness and joint health."  (Tr. 213).

    _2._      _The relevant period_

Plaintiff alleged that he became disabled as of January 25, 2010. (Tr. 48). On March 11, 2010, Plaintiff was seen at CareSouth Carolina for a follow-up visit for his anxiety and hip pain. (Tr. 219). He was diagnosed with a generalized anxiety disorder and bilateral avascular necrosis. (Tr. 219). It was also noted that his anxiety medication (Buspar) was not helping. (Tr. 219). His anxiety and pain medications were modified. (Tr. 219).

On March 15, 2010, a Social Security employee contacted Plaintiff for further information. (Tr. 172). Plaintiff reported that he had not undergone hip surgery and that he was using a cane to walk. (Tr. 172). He was still working at Wendy's restaurant as a cashier and fast food cook, but had limited his work days and work hours. (Tr. 172). The employee noted that Plaintiff was at his next door neighbors when the employee initially called and that Plaintiff had to walk back to answer his phone, but did not sound in distress when he arrived at the phone. (Tr. 172).

Dr. Watt saw Plaintiff again on March 23, 2010 for a follow-up examination. (Tr. 210). Plaintiff indicted he wished to go forward with a total right hip replacement. (Tr. 210). Dr. Watt scheduled a pre-operative visit for April 15, 2010 and hip replacement surgery for April 19, 2010. (Tr. 210). There is no indication that the visit or surgery ever occurred.

A May 12, 2010 note from CareSouth Carolina documented Plaintiff's continued complaints of his "nerves and hip pain."  He was prescribed Fosamax and Zoloft.  (Tr. 218, 241).

On May 28, 2010, State agency psychologist Holly Hadley, Psy.D., reviewed the evidence and opined that Plaintiff did not have any severe psychiatric impairment. (Tr. 229). Dr. Hadley noted Plaintiff's statements that anxiety does not interfere with his daily functions, but that his hips are

7

limiting what he can and cannot do. (Tr. 241). Plaintiff was still working part-time at Wendy's, because he indicated that it made him feel better to do something useful. (Tr. 241).

On June 8, 2010, State agency physician James Weston, M.D., reviewed the record evidence, noting that, despite his hip problems, Plaintiff's gait was normal with good range of motion (Tr. 244). His HIV was stable. (Tr. 244). Dr. Weston observed that [hip] surgery had been planned, but was cancelled for an unknown reason. (Tr. 244). Regarding any physical functional limitations, Dr. Weston opined that Plaintiff retained the ability to lift/carry up to 10 pounds, to stand/walk for 2 hours, and to sit for 6 hours, with only occasional use of foot pedals, no climbing of ladders/ropes/scaffolds, occasional climbing of ramps/stairs, no more than frequent balancing, and only occasional stooping/kneeling/crouching/crawling. (Tr. 244-245).

On October 5, 2010, State agency physician Gary Turner, M.D., summarized the evidence. (Tr. 314, 320). As to Plaintiff's physical functional limitations, Dr. Turner opined that Plaintiff could lift/carry 10 pounds frequently and 20 pounds occasionally, could stand/walk for up to 2 hours, and could sit for 6 hours, with avoidance of pushing/pulling or impacts with his legs. (Tr. 317). He should engage in no climbing of ladders/ropes/scaffolds, only occasional climbing of ramps/stairs, occasional balancing/stooping/kneeling/crouching/crawling, and avoid concentrated exposure to wetness, vibration, and hazards. (Tr. 318, 320).

According to an October 13, 2010 questionnaire completed by CareSouth Carolina, Plaintiff had been diagnosed with a generalized anxiety disorder for which he had been prescribed medications. (Tr. 326). The medications helped his condition. (Tr. 326). Psychiatric care had also been recommended, but Plaintiff "did not follow-up." (Tr. 326). Plaintiff was described as having a slowed thought process, suspicious thought content, anxious mood/affect, but adequate

8

attention/concentration and memory.  He was noted to have "[s]light" work-related limitations as a result of his mental condition. (Tr. 326).

Subsequent notes from CareSouth Carolina document continued treatment with medications for hip pain and anxiety in October 2010 and February and May of 2011. (Tr. 349, 348, 350). While Plaintiff was described as obtaining no relief from medications in October 2010, the subsequent notes did not indicate any such problems, and medications continued to be prescribed. (Tr. 349, 348). In July 2011, Plaintiff was seen for a sore on his left leg for which he was prescribed an ointment. (Tr. 347). No other problems were mentioned. (Tr. 347). Throughout this time, no functional limitations were imposed.

On October 7, 2011 nurse practitioner Tona Tedder of CareSouth Carolina completed a form entitled "Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim," on which she noted a diagnosis of "avascular necrosis in hips bilaterally confirmed on  MRI." (Tr. 343).  She indicated that Plaintiff could not work on a daily basis; could stand ten minutes at one time; could not stand during the workday; could sit ten minutes at one time; could not sit during a workday; could not lift on a frequent or occasional basis; could bend and stoop occasionally; could never balance, work around dangerous machinery, operate motor vehicles, or tolerate cold; could occasionally tolerate heat, dust, smoke, fumes exposure, and noise exposure; could constantly use both hands for fine or gross manipulation; could frequently raise both arms over shoulder level; and did not need to elevate his legs during the day. Ms. Tedder felt that Mr. Christmas suffered from severe pain.(Tr. 343).  On that same date, Plaintiff was seen for a checkup and medication refills. (Tr. 346). He was diagnosed with depression and avascular necrosis with chronic pain. (Tr. 346). He was instructed to stop smoking, to diet/[e]xercise to tolerance, and to

9

return in 1 to 3 months (Tr. 346).

## VI. THE ADMINISTRATIVE HEARING

### *1.*    *Plaintiff's Testimony*

At the January 12, 2012 hearing (Tr. 18-40), Plaintiff stated that he was single, lived with a roommate who was mostly of town, and did not drive, having lost his driver's license several years earlier. (Tr. 22). He said that he had a tenth grade education and had last worked in May 2010, as a cook and cashier at Wendy's. (Tr. 23-24). Plaintiff testified that he was unable to work because of his hip problems and bad nerves. (Tr. 24). He stated that he had pain in his hips "[p]retty much all the time" and that his pain medications helped "[f]or a little while." (Tr. 24, 26).  He said that his pain had worsened over the years, that he did not have a good memory, and that he had problems being around crowds "[a]t times." (Tr. 27, 31). He was using a cane, which he said was prescribed by Dr. Watt. (Tr. 25). Plaintiff stated that he had not had hip replacement surgery because of money and because of concerns that the effects of surgery would not last long enough based on his age. (Tr. 29).

As to his functional limitations, Plaintiff testified that he could walk up to 150 feet with his cane, stand or sit for up to 15 minutes at a time, and lift no more than "about 10 pounds."  (Tr. 26-27). As to his daily activities, Plaintiff stated that he made light meals, used his laptop computer, watched television, and sat in his recliner most of the time. (Tr. 28). He said that his sister would visit every 2 weeks to do his laundry and some cleaning and that his mother usually did his grocery shopping. (Tr. 31-32).

### *2.*    *Vocational Testimony*

Vocational expert witness ("VE") Carey Washington also appeared and testified. (Tr. 33-39).

10

At the ALJ's request, the VE considered a hypothetical younger individual with a limited education with Plaintiff's past work experience and diagnosed impairments of being HIV positive and bilateral necrosis of both hips and the following functional limitations: limited to lifting/carrying/handling no more than 10 pounds occasionally and 1 to 2 pounds frequently, no prolonged standing or walking for more than 2 hours per day, no walking/standing on uneven or wet surfaces, no operation of foot controls, no exposure to excessive vibration, only occasional climbing/balancing/stooping/kneeling/crouching/crawling, no work around heights or hazardous equipment, and no operation of automotive equipment. (Tr. 34-35). The VE testified that such an individual could not do Plaintiff's past relevant work but could perform other work existing in significant numbers in the national economy. (Tr. 35-37). Examples of such jobs included work as a check cashier (Dictionary of Occupational Titles ("DOT") 211.462-026; approximately 150,000 jobs nationally, 8,000 statewide), telephone answering service operator (DOT 235.662-026; approximately 150,000 jobs nationally, 8,000 statewide), and telephone solicitor (DOT 299.357-014; approximately 100,000 jobs nationally, 4,000 statewide). (Tr. 36). The VE also identified various unskilled jobs that such an individual could perform including surveillance systems monitor (DOT 379.367-010; approximately 150,000 jobs nationally, 3,000 statewide), addresser (DOT 209.587-010; approximately 125,000 jobs nationally, 3,000 statewide), and telephone quotation clerk (DOT 237.367-046; approximately 100,000 jobs nationally, 3,000 statewide). (Tr. 37).

ALJ Frederick W. Christian found that Plaintiff had the "following severe impairments: HIV and bilateral avascular necrosis." (Tr. 50). The ALJ stated that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 51). The ALJ found that Plaintiff

11

could lift/carry/handle no more than 10 pounds occasionally and 1 to 2 pounds frequently, could not engage in prolonged standing or walking for more than 2 hours per day, could not stand/walk on wet or uneven surfaces, could not operate foot controls, could not be exposed to excessive vibration, could only occasionally stoop/kneel/crouch, could not work around hazardous machinery, and could not operate automotive equipment. (Tr. 51-52). The ALJ found, based on the testimony of the vocational expert, that Plaintiff could not perform his past relevant work, but could perform other work such as a check cashier, telephone answering service operator, an telephone solicitor. (Tr. 29-30). Since Plaintiff retained the ability to perform a significant number of jobs existing in the national economy, the ALJ determined that Plaintiff was not disabled from January 25, 2010 through February 17, 2012. (Tr. 55).

## VII. DISCUSSION AND ANALYSIS

### I.    Issue One

Plaintiff initially challenges the ALJ's consideration of the opinion of nurse practitioner Tona Tedder at Caresouth Carolina. Defendant argues that Ms. Tedder was not a "treating source," such that her opinion was not entitled to any special evidentiary weight. Defendant also asserts that substantial evidence supports the ALJ's assessment of Plaintiff's functional limitations.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(c)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e.

12

it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. § 404.1527(c)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96–2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

A nurse practitioner, such as FNP Tedder is not an "acceptable medical source." See 20

C.F.R. § 404.1513; SSR 06-03p. She is not a treating source whose medical opinion may be entitled to controlling weight. See 20 C.F.R. § 404.1527(a)(2); 20 C.F.R. § 404.1513. Opinions from other medical sources, however, may reflect the source's judgment about a claimant's symptoms, diagnosis and prognosis, what the individual can do despite the impairment, and physical and mental restrictions. See SSR 06-03p. "[T]he case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." Id. SSR 06-03p further provides: Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. Here, the ALJ's decision to discount FNP Tedder's opinion is correct under controlling law and supported by substantial evidence. The ALJ clearly considered the opinion of NP Tedder as evidenced by his following notation:

> Ms. Tonna Tedder, FNP, noted on October 7, 2011, the claimant had diagnosed avascular necrosis bilaterally in the hips, which was confirmed by MRI, and that he suffered severe pain. Ms Tedder further confirmed that the claimant would not be capable of working for any hour during the day and would only be capable of standing for 10 minutes at one time and sitting for 10 minutes at one time.  Ms. Tedder further noted the claimant would not be capable of prolonged sitting in a workday nor performing any lifting on a frequent or occasional basis.  It was also noted the claimant could occasionally bend, stoop, tolerate heat, dust, smoke or fume exposure of noise.  Ms Tedder further noted the claimant would be restricted in that he would only be capable of frequently raising either arm over shoulder level and precluded from any balancing, working around dangerous equipment or operating a motor vehicle.

> (Tr. 52-53).

14

As the ALJ noted consistently that Ms. Tedder was a nurse practitioner, her opinion was appropriately discounted in part because she is not a physician. Additionally, the ALJ also articulated other reasons for discounting NP Tedder's opinion, including that it was contradicted by persuasive evidence including NP Tedder's own treatment notes and the claimants activities of daily living. The ALJ noted as follows:

> I have considered the opinion of Ms. Tonna Tedder, FNP, that the claimant has significant restrictions and limitations due to severe pain and cannot work; however, cannot give this opinion controlling weight because it is contradicted by persuasive evidence, especially Ms. Tedder's own treatment notes and the claimant's activities of daily living. Her treatment notes show only complaints of hip pain with no clinical findings to support the extreme limitations she described in her medical source statement.

Additionally, as noted by the Defendant, the ALJ's finding was supported by the other medical evidence of record as well as by Plaintiff's own statements. Plaintiff himself stated that he could not stand for long periods (Tr. 182) and could not lift more than 5 pounds (Tr. 187), but that he could prepare light meals, wash dishes, do light laundry (Tr. 184), do grocery shopping once per month (Tr. 185), and sit and talk with visitors or talk on the phone. (Tr. 186). He said that he spent his days watching television, reading, preparing and eating light meals, talking on the phone, and answering the phone for his roommate. (Tr. 183). Based on a review of the medical records and opinions as well as all of the other evidence in the record, there is substantial evidence to support the ALJ's decision. The ALJ carefully considered the opinions of all of Plaintiff's medical sources and appropriately discounted the opinion of FNP Tedder in accordance with the appropriate factors. The ALJ's analysis was in compliance with the regulations and case law set forth above regarding physician and other medical source opinion evidence. Finding no legal error, the Court notes that "[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make

credibility determinations, or substitute our judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Johnson v. Barnhart , 434 F.3d 650, 653 (4th Cir. 2005).

## II.    Issue Two

Plaintiff alleges also that the ALJ failed to properly evaluate and make adequate findings regarding Plaintiff's credibility.   The undersigned disagrees. The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985).

It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. SSR 96–7p.

Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective

complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p.

When assessing the credibility of Plaintiff's subjective complaints, the ALJ must analyze such complaints in view of the following factors: (1) the nature, location, onset, duration, frequency, radiation and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and, (6) Plaintiff's daily activities. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996) (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)). In addition to these factors, the ALJ must consider all of the relevant evidence in assessing the claimant's credibility concerning the intensity and persistence of the pain and its limiting effects. 20 C.F.R. § 404.1529(c). A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Mickles, 29 F.3d at 927.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) ( quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any

17

subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons

for that weight." SSR 96–7p.

Here, the ALJ accepted that Plaintiff had medically determinable impairments that could

reasonably be expected to cause the alleged symptoms, but cited both objective and subjective

evidence detracting from Plaintiff's statements regarding the extent of his limitations. (Tr. 53).  The

ALJ indicated that:

> The medical evidence shows the claimant's HIV is stable with good CD4 counts and viral
> loads per the treatment notes.  The claimant's limitations are due to his bilateral avascular
> necrosis, which limits him as described in the above residual functional capacity.  The
> claimant has avascular necrosis as confirmed by Dr. Watt and by clinical findings and an
> MRI.  At the hearing, the claimant did not appear to be in pain; and, despite his testimony he
> cannot sit longer than 10 minutes, was able to sit without standing for the entire hearing.  The
> claimant walks with the assistance of a cane, but otherwise has no difficulty ambulating other
> than the restrictions listed above that accommodate his avascular necrosis.  The claimant
> denied any medication side-effects except insomnia.  There was also alleged anxiety and he
> takes Alprazolam, but his treatment notes at Hope Health indicate that he had adequate
> memory and concentration and only a "slight" mental problem.  Testimony from the claimant
> reflected he was independent at home, lives alone and can take care of himself with assistance
> from his sister (who helps with laundry and cleaning) and from his mother (who helps with
> grocery shopping).  The claimant testified that he lost his driver's license years ago due to
> DUI and cannot drive so he is unable to go grocery shopping unless someone drives him.  He
> stated that he spends most of his time in a recliner watching television or on the computer.

Substantial evidence supported the ALJ's finding that Plaintiff's allegations of subjectively

disabling symptoms were not credible. (Tr. 53). The ALJ discussed the medical records and opinions

regarding the severity and limiting effects of Plaintiff's impairments, which do not support Plaintiff's

claim of impairments so extreme as to be disabling. (Tr. 52-53).  See 20 C.F.R. §§ 404.1529(c)(1),

416.929(c)(1) ("We also consider the medical opinions").The ALJ made specific findings in support

of his conclusion that Plaintiff's subjective complaints were not completely credible.  The ALJ noted

inconsistencies between Plaintiff's claims and other evidence. Plaintiff testified that he was unable

to sit for more than 15 minutes at a time. (Tr. 27). However, the ALJ observed that Plaintiff sat continuously through the entire hearing (Tr. 53), which lasted 36 minutes (Tr. 20, 40). Plaintiff had also alleged nervousness, a poor memory, and a dislike of crowds (Tr. 30-31), but the ALJ noted that the medical records indicated only "[s]light" work-related limitations from his mental condition. (Tr. 53, 326). These were valid credibility considerations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("any symptom-related functional limitations and restrictions..., which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account").

Moreover, as noted by the ALJ, Plaintiff reported activities of daily living that were inconsistent with his allegations of pain and other symptoms that were so extreme as to be disabling (Tr. 53). Plaintiff testified that he lived mainly alone (albeit with some assistance from his roommate, mother, and sister) and was able to maintain his personal hygiene, prepare his own meals, and watch television. (Tr. 28, 186). Plaintiff also stated that he would read, sit and talk with visitors or talk on the phone, and answer the phone for his roommate. (Tr. 183, 186). These were also valid credibility considerations. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (I) Your daily activities"). The ALJ's consideration of these factors indicates that he adequately considered how Plaintiff's impairments affected his daily routine. Courts have generally found that evidence of similar levels of activity tends to weigh against a finding of disability. See Johnson, 434 F.3d at 658 (ALJ properly found claimant's description of "excruciating" pain inconsistent with her testimony that she cooked, cleaned the house, read, watched television, visited relatives, and attended church twice weekly); accord Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross, 785 F.2d at 1166. Additionally, as noted above, the ALJ also considered objective evidence, which  further supports the ALJ's determination that Plaintiff's

19

impairments were not disabling.  The Court finds that the ALJ's discussion of Plaintiff's credibility is specific and goes beyond mere boilerplate language.   Because the record contains substantial evidence supporting the ALJ's conclusion about Plaintiff's limitations, the ALJ's credibility determinations are entitled to deference.

## VIII.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.

Based upon the foregoing, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 26, 2014
Florence, South Carolina